IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2004

## STATE OF TENNESSEE v. ANTHONY ANTONIO ANDERSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 02-475     Roy B. Morgan, Jr., Judge**

_____

**No. W2003-01418-CCA-R3-CD  - Filed August 23, 2004**

_____

The Appellant, Anthony Antonio Anderson, was convicted by a Madison County jury of rape and was sentenced to nine years in the Department of Correction as a violent offender.  On appeal, he argues that the evidence presented at trial was insufficient to support the verdict.  After review, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Clifford McGown, Waverly, Tennessee (at trial and on appeal); George Morton Googe, District Public Defender and Stephen P. Spracher, Assistant Public Defender (on appeal), for the Appellant, Anthony Antonio Anderson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On April 22, 2002, the fourteen-year-old victim, B.V., [1] was babysitting Bobby and Patricia Andersons' three-year-old daughter, Alex.  The victim and the Andersons were neighbors.  After the victim and Alex returned home from a baseball game between 8:00 and 8:30 p.m., the two went inside the Andersons' home to watch cartoons.  At this time, the Appellant, his uncle, Bobby

_____

[1]In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials.  *State v. Schimpf*, 782 S.W.2d 186, 188 n. 1 (Tenn. Crim. App. 1989).

Anderson, and Chris Rutherford were on the Andersons' porch drinking beer. Patricia Anderson was at work.

While the victim and Alex were watching cartoons, the Appellant came inside, sat down on the couch, and started watching television. The Appellant repeatedly asked the victim if he could "f- - -" her, to which she responded no. The Appellant picked the victim up and pushed her "through the living room, through the kitchen into the hallway and then into the laundry room." He unbuttoned her pants and attempted to pull them down. The victim managed to button her pants, but the Appellant was able to unbutton them again. He then forced her against the dryer and "stuck his penis inside" her. The Appellant ejaculated onto the floor. He used a pink towel to clean up the floor, which he left in the laundry room. The victim then pulled up her pants, picked up Alex, and went out the back door around to the front of the house.

Three days later on April 25, 2002, the victim reported the rape to Judy Gammon, her school guidance counselor. Gammon called the police and the victim's mother. The victim stated that she did not report the rape earlier because "he told me that he would tell my mama that I had other boys at my house, and I was scared that my mama would believe him."

The victim was taken to Jackson-Madison County General Hospital, where a forensic exam was performed. Amy Wood, a registered nurse, testified that the victim was able to talk about what happened, but she cried afterwards. Dr. Phil Norsworthy practices emergency medicine and stated that it was "very unlikely" that semen would be found on a victim three days after the rape occurred.

Upon returning home from the hospital, the victim's mother went next door to the Andersons' residence and retrieved the pink towel. Patricia Anderson got the towel "[o]ut of her laundry floor" and placed it in a shopping bag. The following morning, the victim's mother gave the towel to the police. Additionally, a blood sample was taken from the Appellant during the investigation.

Special Agent Chad Johnson of the Tennessee Bureau of Investigation (TBI) tested the evidence in the present case. The presence of semen was found on the pink towel, which matched the Appellant's DNA. According to Agent Johnson, a second person's DNA was found on the towel; however, it was "very weak" and he could only get a partial profile. He testified, "All I can say is that it does match up with [the victim] in a partial profile and is not complete, but every place that there is a weak allele, it does match up with her DNA."

The Appellant gave a contrary version of events to that of the victim. He claimed that he briefly saw the victim at his uncle's house when she returned to the house from the baseball game. He denied any contact with the victim or that he raped her. The Appellant testified that he had sex with a prostitute in an alley behind the Andersons' home two days before the victim said he raped her. He explained that he had "seen [the prostitute] around a couple of times" and, at one time, he knew her name but had forgotten it. He claimed that the pink towel was in the back seat of his car, and he used it to clean himself after he and the woman had sex. He then returned the towel, which

he had borrowed to wash his car, to the Andersons' home.  The Appellant believed that the victim could have witnessed him and the woman having sex.  He stated that he had previously told the victim he was going to tell her mother that she had boys over when her mother was not home.

Following the conclusion of proof, a Madison County jury found the Appellant guilty of rape, and the trial court imposed a nine-year Department of Correction sentence. This timely appeal followed.

## ANALYSIS

The Appellant argues that the evidence was insufficient to support his conviction for rape. The Appellant's sufficiency argument in its entirety follows:

> The State failed to explain the presence of the [other] person's DNA other than to suggest through their expert that the DNA might belong to the victim.  The State had the ability to do blood testing, but it was not requested of the TBI.

> When [the victim] was examined by Dr. Norsworthy he found no vaginal tears or lacerations.  Further, he found no bruising, or any other sign of injury.  The absence of any sign of force is inconsistent with [the victim's] testimony about the alleged rape.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact.  *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993).  Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994).  Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In the present case, in order to convict the Appellant of rape, the State was required to prove: (1) the Appellant had unlawful sexual penetration of the alleged victim; (2) force or coercion was used to accomplish the act; and (3) the Appellant acted either intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-13-503(a)(1) (2003); 7 TENNESSEE PRACTICE, TENNESSEE PATTERN JURY

INSTRUCTIONS - CRIMINAL 10.02 (Comm. of the Tenn. Judicial Conference 5th ed. 2000). Sexual penetration includes, "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13- 501(7) (2003).

The proof, in the light most favorable to the State, established that, while the victim was babysitting, the Appellant sat down on the couch beside her and repeatedly ask her to have sex with him. She refused. He then picked her up and pushed her into the laundry room, where he forced her against the dryer and sexually penetrated her. He ejaculated onto the floor and used a pink towel to clean it up. This court has previously held that a conviction based upon the victim's testimony alone is sufficient. *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). However, the victim's testimony was sufficiently corroborated by DNA testing. Sperm on the towel matched the Appellant's DNA and, while Agent Johnson could not say for certain, a partial profile of someone else's DNA on the towel matched that of the victim's. Moreover, Dr. Norsworthy testified, "You may or may not have tears from a forcible rape."

A verdict of guilty accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. *Cazes*, 875 S.W.2d at 259; *Harris*, 839 S.W.2d at 75. Despite any conflicts within the proof at trial, the jury, as the arbiters of the credibility of the witnesses, chose to accredit the testimony of the victim and reject the claims of the Appellant. The Appellant has had his day in court. This court may not reevaluate the evidence or substitute its inferences for those drawn by the trier of fact from the evidence. *Cabbage*, 571 S.W.2d at 835. Accordingly, this issue is without merit.

## CONCLUSION

We conclude that there was sufficient evidence to support the Appellant's conviction for rape. Accordingly, the judgment of the Madison County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE